In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2488

LEANNA KRAUSE,

Plaintiff-Appellant,

v.

CITY OF LA CROSSE, et al.,

Defendant-Appellees.


Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99 C 0389--Barbara B. Crabb, Judge.


Argued November 7, 2000--Decided April 10, 2001


Before BAUER, COFFEY, and EASTERBROOK, Circuit
Judges.

COFFEY, Circuit Judge.  On July 11, 1999,
plaintiff-appellant Leanna Krause and co-
plaintiff Nancy O'Neal/1 filed a complaint in
the Federal District Court for the Western
District of Wisconsin alleging claims of sex
discrimination, sexual harassment and retaliation
against their employer, the City of La Crosse,
Wisconsin, and their supervisors, Gene Pfaff and
Wayne Delagrave, in violation of 42 U.S.C. sec.
1983, Title VII of the Civil Rights Act, and the
Equal Pay Act. Upon motion of the defendants, the
trial judge granted summary judgment against
Krause on each of her claims. On appeal, Krause
raises only the trial court's dismissal of her
retaliation claims under Title VII and the Equal
Pay Act. We affirm.

I.  BACKGROUND

   Leanna Krause was employed as an account
analyst for the City of La Crosse's finance
department from October 8, 1989, through January
1999./2 As an account analyst, Krause was under
the supervision of the Director of the Finance
Department, Gene Pfaff, and the Deputy Director
of Finance, Wayne Delagrave. Prior to the
relocation of her office in March 1998, Krause
and three other Finance Department employees, Sue
Wierman, Kelley Branson, and John Gallagher, were

stationed at desks in a front office room. Krause and the other employees were responsible for handling customers at the counter and answering telephone calls from the public. However, Krause's fellow employees (Wierman, Branson, and Gallagher) testified that Krause would routinely refuse to answer phone calls or wait upon members of the public at the counter. Although Krause denies this allegation, she does admit that she repeatedly requested permission to move her workspace from the front office area to an underutilized back room in the City's Finance Department.

## A.  Krause Complains

As a non-union city employee, Krause was subject to a "merit pay plan" under which annual performance evaluations determined whether employees were eligible for pay increases./3 Under this plan, performance evaluations were sent to the City's Personnel Department where the Personnel Director evaluated the reports and recommended a salary adjustment to the Finance and Personnel Committee. It is undisputed that for the years 1994 through 1998, Krause annually received performance ratings that were consistently below the average performance ratings of other city employees. Consequently, she did not receive a merit raise in any of these years. After being informed at her annual merit review meeting on February 23, 1998, that she would not receive a merit-based pay raise, Krause complained to Delagrave that she was being discriminated against with respect to merit increases because she is a woman.

## B.  Krause Moves

Shortly thereafter, on March 6, 1998, Delagrave informed Krause that he had decided to grant her long-standing request to move her work space from the front office to the back office, explaining that the move resulted from his recent observation of a certain amount of tension in the front office.

On March 10, 1998, Delagrave issued Krause a letter of reprimand, which stated in part:

This will confirm our discussion Friday regarding relocation of your work space. I am putting this in writing so that there are no misunderstandings as to what is taking place.

As I mentioned, I have specifically taken the opportunity to observe the front office area for the last 2  weeks. I was extremely disappointed at your level of professionalism, lack of courtesy and consideration given to departmental

coworkers as well as the lack of effort to be a departmental team player. I expect more from you and so should you.

You have left me no choice but to relocate your work space in order to ease office tension. As soon as arrangements can be made, you will be able to occupy your new space.

I have made you aware of possible conflicts and problems in doing this relocation; auditors, census workers, and interns sharing work space, printer noise, different equipment, and location of data that must be shared by everyone in the department (most of which will have to remain in the front office area until we can work out another solution) all of which you have acknowledged.

In response to Delagrave's letter, Krause gave Finance Director Pfaff a letter dated March 23, 1998, explaining that she was pleased to move to the back office, but objected to the criticism accompanying the move:

This letter is in response to the letter (see attached), written by Wayne Delagrave on March 10th, regarding my "relocation of work space": (sic) On Friday, March 6th, Wayne asked for a moment of my time to step into his office. He stated to me (in a positive tone) that he had been observing my professionalism in the office for the last couple of weeks (since my merit review took place). He further stated that "after observing me" he had decided to "grant" my request (which I have made during each and every merit review for the last six years) to move from the front office to the back unutilized area.

* * * *

I didn't question being moved since I had repeatedly requested this move and since the other three staff members out front are union members. I have also worked out in the front office longer than the other three employees. Wayne and I did discuss some of the possible conflicts which could arise, such as covering the union worker's (sic) breaks and location of needed data.

* * * *

I left Wayne's office pleased that he had talked to you (as requested during my merit review), and that this move would relieve congestion and free up workspace in the front office.

On Tuesday, March 10th, a letter written by Wayne Delagrave was sitting on my chair when I arrived

at work. I was shocked and dismayed when I read the letter which stated that "he had no choice but to relocate me to relieve office tension."

\* \* \* \*

To repeat myself, the relocation of my work space has been a positive in this department's work environment (of harassment against me), as agreed in our March 12th meeting.

Although Krause's March 23, 1998 letter reveals that she initially viewed the move as a positive change, in time she grew to dislike her new surroundings. In her appellate brief, Krause asserts that she frequently complained to Delagrave that her new office area had not been renovated as she had envisioned, but instead "was noisy and dingy and remained cluttered with old computers, boxes and assorted junk." She also contends that she informed Delagrave and Pfaff of the need for renovations in the back office. Her deposition testimony, however, reveals that she did not inform her supervisors that her request to move to the back office was conditioned on renovation of that area. For example, when examined by defense counsel, she testified:

Q: My understanding, and correct me if I'm wrong, is that you wanted to move to the back room?

A: I had asked to move to the back unutilized space.

Q: So if you wanted to go back there, explain to me why you're alleging [now] that it's a noisy and inappropriate location?

A: Because it was not reformulated into office space.

Later in her deposition, however, Krause admitted that she had not told Pfaff or Delagrave that her desire to move was conditioned on the back office being renovated.

C. Procedural History

When Pfaff did not respond to Krause's letter of March 23, 1998, she went to the City's Personnel Director, James W. Geissner, and complained. Geissner asked Krause to put together a list of concerns about working with Pfaff and Delagrave. Krause compiled a list containing literally dozens of complaints. On May 29, 1998, Krause and her husband met with Geissner, Pfaff, and Delagrave in an effort to discuss her grievance. After this meeting, Geissner decided to bring in attorney Susan Love to investigate Krause's complaints and issue a report of her

findings. After reviewing Love's report, the City's mayor issued a written reprimand to Pfaff for exercising "poor judgment" in managing the employees of the Finance Department.

Emboldened by the reprimand to Pfaff, Krause filed a discrimination complaint with the Equal Rights Division on August 24, 1998. On June 11, 1999, Krause and co-plaintiff Nancy O'Neal[4] filed a complaint in the Federal District Court for the Western District of Wisconsin against the City, Pfaff and Delagrave asserting claims of sex discrimination, sexual harassment, and retaliation. On March 28, 2000, the district court granted summary judgment to the defendants on each of Krause's claims. In dismissing the retaliation claims, the only issues on appeal, the trial court wrote:

In order to prove retaliation, plaintiff must make out a prima facie case that consists of three elements: 1) she engaged in protected expression; 2) she suffered an adverse action by her employer; and 3) there is a causal link between her protected expression and the adverse action. Plaintiff has overcome the first hurdle. The second one is more difficult. The facts and law do not support her claim that her move and her reprimand constitute adverse employment actions. It is undisputed that plaintiff had been asking for some time to make the exact move Delagrave directed her to make. She wanted to be away from the counter and the phones. She was pleased when Delagrave told her she was to make the move. Her mood did not sour until she saw Delagrave's written reasons for the move. Thus, her real objection to the move, and her only one, is that it was the result of perceived deficiencies in her job performance, as documented by the letter of reprimand Delagrave left on her chair.

* * * *

It was only when she saw the letter and realized how she had achieved the move that she considered it to be punishment. Plaintiff cannot characterize her move as a separate punishment when it was the very thing she had wanted all along.

Finally, the causal connection [the third hurdle] between defendants' acts and her complaint of sex discrimination is tenuous at best.

* * * *

In summary, I conclude that plaintiff Krause cannot make out any of her claims of sex

discrimination under 42 U.S.C. sec. 1983 or illegal retaliation under the Equal Pay Act or Title VII.

## II. DISCUSSION

We review the district court's decision to grant summary judgment de novo, viewing the record in the light most favorable to Krause and drawing all reasonable inferences in her favor. Williams v. Chartwell Fin. Servs., 204 F.3d 748, 752 (7th Cir. 2000). Summary judgment is appropriate whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "If no reasonable jury could find for the party opposing the motion, it must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### A. Retaliation

Krause contends that the district court improperly granted summary judgment on her claims of retaliation under Title VII and the Equal Pay Act. As is common in such suits, Krause presented no direct evidence of discrimination, but proceeded under the burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, Krause must make a prima facie case of retaliation. The prima facie case includes three elements: (1) that she engaged in statutorily-protected expression by complaining about discrimination covered by Title VII and/or the Equal Pay Act; (2) that she suffered an adverse job action; and (3) that there is a causal link between the protected expression and the adverse job action. Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000).

#### 1. Protected Expression

With regard to the first factor, both Krause and the district court relied upon Krause's informal complaint of discrimination at a February 1998 merit review meeting as proof that she had engaged in statutorily protected expression. Although we have not yet ruled on the issue, several other circuits have held that informal complaints of discrimination constitute protected expression under Title VII. See, e.g., Lambert v. Ackerley, 180 F.3d 997, 1007 (9th Cir. 1999); EEOC v. Romeo Cmty. Schs., 976 F.2d 985, 989 (6th Cir. 1992); EEOC v. White & Son Enter., 881 F.2d 1006, 1011-12 (11th Cir. 1989); Love v.

RE/MAX of America, Inc., 738 F.2d 383, 387 (10th Cir. 1984). Because we are of the opinion that Krause has failed to establish that she suffered an adverse employment action, we need not address the issue of whether Krause's informal complaint constituted a protected expression.

2.  Adverse Employment Action

Assuming arguendo that Krause's comments at her February 1998 performance review are protected expression, obviously only events that occurred after that meeting can serve as support for her claim that she suffered an "adverse employment action" in retaliation for engaging in the protected expression. In an attempt to support her claim, Krause points to two events: (1) the letter of reprimand she received noting her low "level of professionalism, lack of courtesy and consideration given to department workers as well as the lack of effort to be a department team player;" and (2) her move to the back office.

With regard to her claim that the letter of reprimand constituted an adverse job action, the plaintiff-appellant ignores firmly established circuit precedent that a letter of reprimand is not an adverse employment action unless the letter is accompanied by some other action, such as job loss or demotion. Sweeney v. West 149 F.3d 550, 556 (7th Cir. 1998); Smart v. Ball State Univ., 89 F.3d 437, 442 (7th Cir. 1992). "This circuit already has concluded that negative performance evaluations, standing alone, cannot constitute an adverse employment action . . . ." Sweeney, 149 F.3d at 556. A review of the record demonstrates that Krause has not suffered any job loss or demotion, but on the contrary is still currently employed with the City of La Crosse and was recently given a raise. Consequently, the letter of reprimand is not an adverse job action under the law of this circuit.

Similarly, Krause's claim that the decision to move her from the front office to the back room constitutes "adverse action" is meritless. Although Krause complains in her lawsuit of being moved to the back office in March of 1998, it is undisputed that she had repeatedly requested a move to that area. For example, in her letter of March 10, 1998, Krause stated: "I didn't question being moved since I had repeatedly requested this move . . . ." (Emphasis added). Krause testified at her deposition that she had asked to move to the back room on a number of occasions to gain more space but "did not tell my supervisor [Delagrave] or my department head [Pfaff] that it was conditional" on the renovation of the area. In fact, Krause's March 23rd letter to Pfaff

states that she considered the move a "positive" change despite discussing the potential "conflicts" and downsides of the move with Delagrave.

In short, although Delagrave may have considered moving Krause to the back office as a form of punishment, the fact that Krause had continually requested such a move renders her claim that it was an adverse employment action meritless. As we stated in Johnson v. City of Fort Wayne, 91 F.3d 922, 932 (7th Cir. 1996), "a materially adverse change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." As is clear from the record, including Krause's letter of March 1998 and her deposition testimony, she did not feel the move was either "disruptive" or an "inconvenience." On the contrary, she was happy with the move itself, but unhappy about the criticism contained in the letter that accompanied her move. We are convinced that employers are entitled to assume that if an employee requests to be transferred to another area of the office, then she actually wants the transfer. Consequently, we refuse to construe Krause's move to the back office, which she had repeatedly requested during her period of employment with the city, to be an adverse employment action./5

B.  Motion for Reconsideration

On appeal, Krause also appeals the judge's denial of her motion to reconsider, arguing that statements made by Bill Schmidt, a former Assistant Police Chief for the City of La Crosse, were admissible and should have been considered by the trial judge./6 Specifically, Krause's motion to reconsider was based on statements made by Schmidt to Susan Love, the outside investigator hired by the city to look into the allegations of sex discrimination. According to the transcripts of the interview, Schmidt told Love that he visited Krause after she had moved to the back room of the accounting office and found that she was in a room that contained printers, broken computers, and other items. Schmidt described the room as "dimly lit, often the lights are out. There's no decoration, there's no cleanliness." He went on to state there was "[n]o way in hell I would believe her if she told me it was a reward. She was punished. She was placed there as a disciplinary measure because she was upsetting someone." While Schmidt's statements are arguably relevant to Krause's retaliation claim, we agree with the trial judge that they are inadmissible hearsay.

As in the district court, Krause argues that

Schmidt's statements are admissions of a party opponent excepted from the prohibition against hearsay under Fed. R. Evid. 801(d)(2)(D) because Schmidt was a city employee speaking about a matter within the scope of his employment. We disagree.

Schmidt was an assistant police chief and as such we are of the opinion that he was not acting within his scope of employment when he discussed the alleged motivations of members of the city's finance department in transferring Krause to the back office. To hold otherwise would hold a city accountable for statements made by any city employee, and Rule 801(d)(2)(D) does not cast such a wide net. As such, the district court, for the reasons set forth herein, properly refused to consider Schmidt's statements when denying the motion to reconsider.

The trial court's entry of summary judgment is

AFFIRMED.

/1 O'Neal entered into a settlement with the defendants and is not involved in this appeal.

/2 Krause continues to work for the City of La Crosse and was recently promoted to Financial Coordinator in January 1999.

/3 Defendants Delagrave and Pfaff were also subject to the merit pay plan.

/4 The factual basis of O'Neal's claims is not relevant to our opinion as O'Neal has entered into a settlement with the City and is not involved in this appeal.

/5 As Krause has failed to prove the second factor of her prima facie case of retaliation, there is no need to address the district court's alternative finding that she also failed to establish the third factor. Having failed to prove an "adverse employment action," Krause can obviously not show a causal link between her protected action (her complaint) and the non-existent adverse employment action.

/6 Schmidt died in 1998.