In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3840

Michael J. Olsen,

Plaintiff-Appellant,

v.

Marshall & Ilsley Corporation, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99 C 774 C--Barbara B. Crabb, Chief Judge.

Argued April 9, 2001--Decided September 25, 2001


   Before Posner, Evans, and Williams, Circuit
Judges.

   Williams, Circuit Judge.  In this Title
VII suit alleging sex discrimination and
retaliation, Michael J. Olsen appeals the
district court's grant of summary
judgment to his former employer, M&I Mid-
State Bank ("Mid-State"), and his former
supervisor, Paul Schaller, (collectively
"the defendants"). He also appeals the
district court's grant of summary
judgment to Mid-State's parent, Marshall
& Ilsley Corporation, dismissing Marshall
& Ilsley from the suit because Olsen
failed to name it as a respondent in his
Equal Employment Opportunity Commission
(EEOC) charge. Because Olsen has not
created a genuine issue of material fact
as to pretext, we affirm the district
court's grant of summary judgment to the
defendants. We also affirm the district
court's grant of summary judgment to
Marshall & Ilsley for lack of adequate
notice of the claims against it.

I.  BACKGROUND

   We present the facts in the light most
favorable to Olsen, as we must on review
of a motion for summary judgment. Russell
v. Bd. of Trustees of the Univ. of
Illinois at Chicago, 243 F.3d 336, 339
(7th Cir. 2001).

Olsen served as a Mid-State vice president and manager of its Mauston branch for approximately two years. In the first written evaluation of Olsen's performance in November 1996, Olsen's supervisor, Paul Schaller, rated Olsen's performance as "good" and "above average" but noted that Olsen needed to increase his personal sales, better promote Mid-State in the Mauston community, and improve his customer relations. The review stated that Olsen's "first priority" should be to improve his customer service skills and increase his sales.

Throughout the remainder of 1996 and in early 1997, Olsen observed interactions between Schaller and Kathy Potter, a female manager of another branch supervised by Schaller, that were suggestive of a sexual relationship, and because Schaller recently recruited Potter, Olsen thought the relationship might not have been consensual. Olsen reported his concerns to Karon Ruch, Mid-State's employment representative, on July 31, 1997, and a few weeks later, Ruch, in turn, informed Robert Schmidt (Mid-State's Chief Executive Officer) of Olsen's observations.

Olsen's second evaluation in October 1997 was, in his view, "scathing." In this review, Schaller stressed Olsen's lackluster personal sales without, in Olsen's opinion, considering how Olsen's devotion to other tasks affected his ability to concentrate on personal sales. The evaluation also documented a meeting that had been called by three Mauston branch employees to discuss their concerns with Olsen's managerial style and other performance-related issues. Olsen's personal sales did not improve during the remaining months of 1997. By the end of that year, he had failed to meet half of his personal goals. But by early spring of the following year, his personal sales numbers showed dramatic improvement.

Still concerned about the nature of Schaller and Potter's relationship, Olsen contacted Ruch a second time on February 27, 1998. Ruch informed Schmidt about Olsen's second report. Approximately one month later, Schmidt set up a meeting with Terrance Rothmann (the Executive Vice President of Mid-State) and William

Smith (Mid-State's Cashier/Controller) during which they decided that Olsen should be terminated.

Olsen filed charges with the EEOC claiming sex discrimination and retaliation in violation of Title VII. The EEOC issued a right to sue letter and he filed suit in federal court. The district court granted the defendants' motion for summary judgment on the sex discrimination and retaliation claims as well as Marshall & Ilsley's summary judgment motion requesting dismissal from the suit. Olsen appeals both of the district court's determinations.

II. ANALYSIS

We review de novo a district court's grant of summary judgment, viewing the record and drawing all reasonable inferences therefrom in Olsen's favor. See Warsco v. Preferred Technical Grp., 258 F.3d 557, 563 (7th Cir. 2001). We will affirm the district court's grant of summary judgment if there is no genuine issue of material fact and the moving party (here, Mid-State) is entitled to judgment as a matter of law./1 Id.; Fed. R. Civ. P. 56(c). Because Olsen has not presented sufficient evidence from which a reasonable factfinder could conclude that Mid-State's articulated reasons for terminating him are a pretext for intentional discrimination, we hold that the defendants are entitled to summary judgment. We further hold that the district court's grant of summary judgment to defendant Marshall & Ilsley, dismissing it as a defendant because Olsen failed to name it as a respondent in his EEOC charge, was proper.

A. Sex Discrimination and Retaliation Claims

Olsen has chosen to proceed under the "indirect" or, as otherwise termed, the McDonnell Douglas burden-shifting method of proving a discrimination or retaliation claim. Under this method, the plaintiff must first establish a prima facie case. See Dunn v. Nordstrom, Inc., No. 00-2958, 2001 WL 898757, at *3 (7th Cir. Aug. 10, 2001). If he meets this burden, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its termination. Id. Once the defendant

does so, the burden shifts back to the plaintiff to prove that the defendant's articulated reason is a pretext for discrimination. Id.

In our review of a district court's disposition of a sex discrimination or retaliation claim, we can move directly to the third stage of the burden-shifting paradigm, the question of pretext. See Rummery v. Illinois Bell Telephone Co., 250 F.3d 553, 556 (7th Cir. 2001). We choose to do so here not because we are convinced that Olsen has established the prima facie case of either of his claims, but because our prima facie case analysis would overlap substantially with the question of pretext. See Gordon v. United States, 246 F.3d 878, 886 (7th Cir. 2001) ("[The] issue of satisfactory job performance often focuses on the same circumstances as must be scrutinized with respect to the matter of pretext."); Morrow v. Wal-Mart Stores, Inc., 152 F.3d 559, 561 (7th Cir. 1998) (noting overlap between another element of the prima facie case and pretext).

Mid-State articulates several legitimate, nondiscriminatory reasons for Olsen's termination. It asserts that Olsen: (1) was a poor performer; (2) was a poor manager; (3) did not sufficiently promote the branch in the local community; and (4) did not willingly work with walk-in customers. Olsen must show that each of Mid-State's reasons are pre textual to withstand summary judgment. See Velasco v. Illinois Dep't of Human Servs., 246 F.3d 1010, 1017 (7th Cir. 2001)./2 The two reasons most heavily debated by both parties--his poor performance and poor management--are the focus of our discussion.

The type of evidence pertinent at the pretext stage, i.e., evidence that calls into question the veracity of the employer's explanation, see Bell v. EPA, 232 F.3d 546, 551 (7th Cir. 2000), may take on many forms, including that which shows that the employer's explanation is without basis in fact. See Velasco, 246 F.3d at 1017. When a plaintiff presents evidence showing that an employer's explanation has no factual basis, a reasonable factfinder may infer that (1) the employer is lying about its true motive and (2) because the employer is in the best position to assert the reason

for its decision, that it offered a false one in order to cover up a discriminatory motive. Bell, 232 F.3d at 550 (internal citations omitted). Presentation of evidence of this sort creates a genuine issue of material fact as to whether the employee was fired for a discriminatory reason.

1. Poor-performance rationale.

Olsen argues that Mid-State's poor-performance rationale has no basis in fact because his personal sales performance improved before his termination. He points to his performance results for the month preceding the month of his termination in which he met over 100% of his personal sales goals for that month./3 The record reveals, however, that for the majority of his tenure as Mauston branch manager, Olsen consistently failed to meet his personal sales goals despite Mid-State's repeated admonitions to improve his performance. Mid-State likely viewed his one month of exceptional performance as an anomaly rather than an indication that a new era of improved performance had begun.
For example, Schaller told Olsen during his first formal review in November 1996 that his "first priority" should be to improve his sales performance, among other things. In the employee response section of that evaluation, Olsen conceded that his sales performance up to that date had been less than satisfactory, stating that he had "been more concerned with subordinate goals and branch goals than [his] own." In the October 1997 evaluation, although commending Olsen for coaching and pushing others to increase their sales, Schaller again told Olsen that he needed to "increase personal sales." In the employee response section of this evaluation, Olsen did not dispute Schaller's assessment of his performance but stated that he would "only concern [himself] with improving [branch sales] and encouraging the advancement of his staff." Olsen failed to increase his personal sales that year, reaching less than half of his goal by the year's end.

Mid-State was free to determine that, based on this history, Olsen's one month of improved performance was not an indication that he would continue to meet

its expectations. In Mid-State's view, "one month of sales does not make a salesman," and we are not authorized by Title VII to impose upon the employer a contrary assessment. See Dunn, No. 00-2958, 2001 WL 898757, at *6 ("[The employer] was entitled to determine that the deficiencies in [the employee's] performance outweighed [his] accomplishments.") (internal citation omitted). Olsen may be correct in suggesting that one month of exceptional performance would allay the average employer's performance concerns, but we are not concerned with the average employer. Our only concern at the pretext stage is whether this defendant honestly remained dissatisfied with its employee's performance. See O'Connor v. DePaul Univ., 123 F.3d 665, 670 (7th Cir. 1997). And Olsen has not presented any evidence that would cause a reasonable factfinder to question whether Mid-State honestly believed its assessment.

Moreover, in our many cases discussing the nature of the pretext inquiry, we have stated that it is not enough for a plaintiff to show that his employer's explanation was based on an inaccurate assessment of its employee's performance. See, e.g., Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 398 (7th Cir. 1998); see Walker v. Glickman, 241 F.3d 884, 890 (7th Cir. 2001) ("[T]he court's role is not to determine whether [the employer's] decision was right, but whether [the employee] presented sufficient evidence that [the employer's] reason was a lie for the action it took."). The plaintiff in Adreani pointed to his own positive perception of his performance in an attempt to create a genuine issue of material fact as to pretext. We rejected his attempt, noting that (even assuming that an employee's perception of his own performance can be considered objective evidence of his abilities) evidence that shows that an employer incorrectly assessed its employee's abilities does not shed light on whether the employer is lying about that assessment. Id. at 399. And without proof of a lie, no inference of discriminatory motive can be drawn. See Bell, 232 F.3d at 550 (internal citations omitted).

Olsen, like the plaintiff in Adreani, has placed his own assessment of his abilities adjacent to his employer's and

asked us to draw from the apparent incongruity the inference that his employer is lying. An employee's perception of his own performance, however, cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities. See Adreani, 154 F.3d at 399.

2. Poor-manager rationale.

Olsen commits similar errors in his attempts to rebut Mid-State's assertion that he was a poor manager. He argues that Mid-State's poor-manager rationale has no factual basis but fails to sufficiently contradict salient facts that provide support for Mid-State's explanation. For example, Olsen claims that his relations with branch employees had improved by the date of his termination. He does not dispute, however, that in October 1997 several Mauston branch employees called a meeting during which they expressed to Olsen their concerns about his lack of leadership in the sales arena, encroaching management style, and poor customer relations skills. And, despite Olsen's unsubstantiated assertion to the contrary, there is evidence that at least one of the employees continued to express concerns about his managerial style until the date of his termination, ultimately suggesting to her supervisors that she would resign if Olsen continued to misuse her time and abilities. Even assuming that Olsen has presented evidence from which a jury could conclude that his employee relations had improved (and he has not), the undisputed evidence clearly provides factual support for Mid-State's assertion. And because there is some factual basis for Mid-State's belief that Olsen was a poor manager, there is no legal basis for us to conclude that a reasonable factfinder could find its explanation a pretext for discrimination. See Adreani, 154 F.3d at 399.

Olsen also implicitly argues that the employee-called meeting was a sham and, therefore, could not have served as a basis for Mid-State's poor-manager rationale. In support of his argument, he points to the fact that the employees called the meeting at Schaller's suggestion. The undisputed evidence shows that it was only after the employees

complained to Schaller about Olsen that Schaller suggested they schedule a meeting with Olsen to discuss their concerns. So it is not clear from the record whether, but for Schaller's suggestion, the employees would have called the meeting.

The fact that Schaller encouraged the employees to call a meeting, however, has no bearing on whether Mid-State honestly believed the substance of the employees' complaints. In their complaints to Schaller and in their subsequent meeting with Olsen, at least two employees expressed that they felt Olsen was "dumping" his work on them and that his spotty knowledge of Mid-State products often left him unable to answer their questions. They also told Olsen about instances where he had improperly completed paperwork for customers or improperly handled accounts and that his over-use of industry jargon made it difficult for customers to understand him. Olsen does not dispute the accuracy of the employees' complaints nor the fact that the decision-makers were aware of them. Therefore, a reasonable factfinder could not say that Mid-State, which was entitled to accept the employees' complaints as true and rely on them in assessing Olsen's competency, had no basis for believing that Olsen was a poor manager. See Adreani, 154 F.3d at 399.

Olsen's remaining attempts to show pretext also fail./4 Because the points Olsen asserts would not lead a reasonable jury to question Mid-State's honest belief in its poor-performance and poor-manager explanations, summary judgment for the defendants was appropriate. See Velasco, 246 F.3d at 1017 (stating that a plaintiff cannot withstand summary judgment if he fails to create a triable issue of fact with respect to each of his employer's legitimate reasons).

B.  Failure to Name Defendant in EEOC Charge

In accordance with Title VII, Olsen filed a complaint with his state Equal Rights Division and the Equal Employment Opportunity Commission. However, he failed to name Marshall & Ilsley, Mid-State Bank's parent, as a defendant in these proceedings.

Olsen's failure to name Marshall & Ilsley in his EEOC charge is fatal. Under the law of this circuit, a parent organization not named in the plaintiff's EEOC charge must be dismissed from the suit unless the plaintiff can show that the parent had notice of the claim against it, as opposed to its subsidiary, and had an opportunity to conciliate on its own behalf. Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 127 (7th Cir. 1989). Olsen has not shown that Marshall & Ilsley had adequate notice or an opportunity to conciliate on its own behalf. He has shown only that Marshall & Ilsley had notice of the claim against Mid-State and participated in the administrative proceedings on Mid-State's behalf, and his self-serving allegations to the contrary are insufficient to create a genuine issue of material fact. See Basith v. Cook County, 241 F.3d 919, 928 (7th Cir. 2001). The district court's grant of summary judgment, dismissing Marshall & Ilsley was proper.

## III.   CONCLUSION

For these reasons, we Affirm the district court's grant of summary judgment to the defendants and its dismissal of defendant Marshall & Ilsley Corporation.

FOOTNOTES

/1 A genuine issue of material fact exists only if "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (citation omitted).

/2 There is one exception to this rule. "There may be cases in which the multiple grounds offered by the defendant for the adverse action . . . are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plain-tiff could withstand summary judgment" by point-ing out the pretextual nature of one reason. Wolf v. Buss (America), Inc., 77 F.3d 914, 920 (7th Cir. 1996). Olsen, however, has not indicated, other than in a perfunctory argument in his reply brief, why this exception should apply here.

/3 The record is unclear as to whether Olsen's performance results for the prior month, which were also extraordinary, were available to Sch-midt, Rothmann, and Smith (the decision-makers) at the time of his termination. No results were available for the month of his termination.

/4 For instance, Olsen points to a positive remark made by Schaller in March 1997, several months before he made his sexual harassment report, that praised Olsen for handling well the task of temporarily managing two Mid-State branches. A stray remark made in March 1997 does not undercut the undisputed evidence that, according to Mid-State's ranking system, Olsen's personal sales performance was far behind his counterparts for the 1997 calendar year, and, therefore, is not the sort of evidence that shows pretext.