**Dong X. SHAW, Plaintiff–Appellant,**

v.

**Sandy MONROE, et al., Defendants–Appellees.**

**No. 01–1445.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 2001.

Decided Oct. 15, 2001.

Before EASTERBROOK, DIANE P. WOOD, WILLIAMS, Circuit Judges.

ORDER

Dong X. Shaw ("Shaw") sued his former employer, Purdue University, as well as certain of its current and former employees (collectively "Purdue"). In his suit, Shaw alleged that Purdue discriminated against him based on his nationality and retaliated against him for filing a charge with the Equal Employment Opportunity

Commission ("EEOC"). Purdue filed a motion for summary judgment, and the district court granted the motion. Shaw now appeals the district court's judgment. For the reasons set forth in the following order, we affirm the judgment of the district court.

In 1992, Shaw was hired as an untenured professor in the School of Engineering. In 1995, Ms. X, a Trinity University student, and her father contacted Purdue and informed the Head of the School of Engineering and the President of the University that Shaw had raped her on a Spring Break cruise. Ms. X's father also forwarded copies of the police report and medical records, and visited with officials at Purdue. After an investigation, Shaw admitted to having been with the girl, but denied raping her. Because the allegations did not involve a Purdue student, occurred off campus, and did not involve police charges, Purdue took no action.

In 1996, Ms. Y, a Purdue University engineering student, filed a complaint with university police alleging that Shaw was stalking her. In October 1996, the Lafayette Police arrested Shaw on the stalking charges. Shaw's supervisors then met and decided to remove Shaw from the classroom and reassign him to research only. Shaw remained at the same pay scale during his reassignment. In March 1997, Shaw wrote his supervisor and informed him that he would like to resume teaching. His request was denied. Shaw then filed a grievance with Purdue and a charge of discrimination with the EEOC.[1] The University Grievance Committee recommended that Shaw's request to return to the classroom be denied, but it also recommended that his probationary tenure period be extended by one year. Purdue offi-

cials informed Shaw of the committee's decision in a letter that made clear that Purdue was considering terminating his employment.

Because Shaw's criminal trial for stalking Ms. Y was delayed numerous times, Purdue began the termination process before the trial. In September 1998, Shaw was acquitted of the stalking charges. In late October 1998; Shaw's termination hearing was held. Shaw and his attorney were in attendance, as were Ms. X's father and Ms. Y's parents.[2] In December 1998, the hearing committee found that Shaw's conduct was improper and injurious to the welfare of the university. Shortly thereafter, the president of the university notified Shaw that he was terminated. Shaw then brought a Title VII action against Purdue seeking damages for discrimination based upon his nationality and retaliation for filing an EEOC charge.

Shaw's first argument on appeal is that the district court abused its discretion by denying his motion for an extension of time in which to file his response to the motion for summary judgment. Pursuant to Rule 6 of the Federal Rules of Civil Procedure, district judges are given discretion to grant a motion for enlargement of time. *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1030 (7th Cir.1998). Under Rule 6, requests for enlargement of time that are filed before the briefing deadline may be granted for cause shown. Fed.R.Civ.P. 6(b).

▮ Shaw filed his motion to enlarge within the briefing schedule, and therefore, all that was required of him was to show cause for the request. As support for his assertion, Shaw contends that the briefing

---

1. In Shaw's EEOC charge he alleged that the University denied his request to return to teaching because of his national origin.

2. The parents of both students testified at the hearing.

schedule fell during Christmas and New Year season and because of holidays and vacations, he could not meet the deadline. Shaw argues that given the holiday season, he did not have an adequate amount of time in which to prepare his brief. However, Shaw had adequate time to file his response in accordance with the local rules.[3] N.D. Ind. L.R. 56.1. Shaw asserts that the district court was unreasonable when it denied his request to enlarge the briefing schedule to January 22, 2001. However, the trial was set for February 20, 2001. To grant Shaw's motion would have left three short weeks for Purdue to file the reply and the district court to rule on summary judgment and have the parties submit the pretrial order. We cannot say that it was unreasonable for the district court to deny Shaw's motions to extend, and therefore, it did not abuse its discretion in doing so.

■ Next, Shaw argues that the district court erroneously applied the "but for" test rather than the "not wholly unrelated" test when it found that a causal connection did not exist between the adverse employment action and the EEOC charge. Purdue counters that under either the "but for" or "not wholly unrelated" test, Shaw has failed to establish a causal connection. We agree.

The evidence Shaw offers to establish a link between his EEOC charge and his termination is insufficient under the "not wholly unrelated" test. Notably, Shaw has failed to present evidence that Purdue officials knew about his EEOC charge before the decision was made to begin termination proceedings. *See Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir.2000). The only evidence Shaw offers to support an inference that

Purdue was aware of his EEOC charge is the suspicious timing between his filing of the charge and the notice of the termination proceedings. Shaw claims that because Purdue notified him of the termination proceedings three months after he filed his EEOC charge, the charge was not wholly unrelated from the termination. However, it is well settled that suspicious timing will support such an inference only when it follows "fairly soon after the employee's protected expression." *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir.1998). A three month interval between the filing of the EEOC charge and the adverse employment action, without other evidence, is insufficient. *Sauzek v. Exxon Coal, USA, Inc.*, 202 F.3d 913, 919 (7th Cir.2000). Moreover, as is evidenced by the record, Purdue made its decision to begin termination proceedings *before* Shaw filed his EEOC charges. Therefore, Shaw has not pointed to circumstances that reasonably suggest the two events are related to one another.

■ Lastly, Shaw claims that the district court erred when it granted Purdue's motion for summary judgment because genuine issues of material fact were in dispute on the issue of pretext. We review the district court's grant of summary judgment de novo, construing the record in a light most favorable to Shaw and drawing all reasonable inferences in his favor. *Olsen v. Marshall & Isley Corp.*, 267 F.3d 597, 600–01 (7th Cir.2001). "Pretext is more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Miller*, 203 F.3d at 1008 (citations and internal quotations omitted). Purdue's proffered reason for terminating Shaw is clear: he

---

**3.** Under the local rules for the Northern District of Indiana, the nonmoving party has thirty days in which to file a response to a

motion for summary judgment. N.D. Ind. L.R. 56.1. In this case, Shaw had more than thirty days within which to file his response.

was alleged to have stalked a student for more than two years. However, Shaw alleges that Purdue's actions were pretextual because it did not take immediate action when it learned of Ms. Y's allegations. Purdue has explained that it delayed taking action until Shaw's criminal trial, and it was only after his trial was delayed a number of times that Purdue proceeded with termination proceedings. Shaw's next contention is that he not only continued to be paid at his full salary, but earned a five percent raise, evidencing Purdue's pretextual motive. Yet, the fact that Shaw was paid his full salary and received a raise is irrelevant when offered to prove that the reason for terminating him was pretextual. *Anderson v. Stauffer Chemical Co.*, 965 F.2d 397, 403–04 (7th Cir. 1992). Finally, Shaw points to the fact that the university grievance committee recommended that his probationary period be extended by a year. However, the grievance committee recommendation was just that, a recommendation. The university made the ultimate determination. Accordingly, because Purdue has presented legitimate, nondiscriminatory reasons for terminating Shaw, summary judgment was properly granted in its favor.

For the foregoing reasons, we affirm the district court's judgment.