**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**ARMSTRONG WORLD INDUSTRIES, INC., Defendant.**

**No. 00–CV–2157.**

United States District Court, C.D. Illinois, Danville/Urbana Division.

Feb. 15, 2002.

Jean P. Kamp, Equal Employment Opportunity Commission, Chicago, IL, for Plaintiff.

Edward C. Jepson, Jr., Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Defendant.

## ORDER

McCUSKEY, District Judge.

This case is before the court for ruling on the Motion for Summary Judgment (# 16) filed by Defendant Armstrong World Industries, Inc. Following this court's careful and thorough review of the documents presented by the parties and the arguments of the parties, Defendant's Motion for Summary Judgment (# 16) is GRANTED.

### FACTS

Roberta Olson was hired by Defendant in March 1979 and is still employed by Defendant at its plant in Kankakee, Illinois. Olson originally worked as a produc-

tion attendant on the midnight shift. Olson later bid on and received positions as first production attendant, relief operator and calendar operator. These positions had a progressively higher pay grade. In 1994, Olson was selected by her supervisor, Jim Patterson, to be a "fill-in" or "backup" leader. In that position, she temporarily filled in for the leader on Line 2 when the leader or supervisor was not present. The job duties of a fill-in leader were the same as a leader. However, a leader also sat in on management meetings and was involved in disciplinary matters. A fill-in leader did not have these responsibilities. Olson testified that she applied for a leader position four or five times. Olson was interviewed for the position each time she applied until the last time she applied in April 1997.

In May 1995, Dean Dandurand complained to Patterson that Olson would get very close to him and rub her breasts against his arm and back. In addition, Paul Scroggins complained about Olson's language. Beth Stauffer from human resources conducted an investigation. In the course of the investigation, Stauffer discussed the allegations against Olson with Deborah LaRocque,[1] who was the human resources manager at Defendant's Kankakee plant from 1991 to 1998. Following her investigation, Stauffer noted that Olson denied engaging in any inappropriate conduct and said she had cleaned up her language. Stauffer concluded that she could not say that one person was more at fault than any other and that the "whole crew" needed to undergo sexual harassment training as soon as possible. The record shows that, on June 22, 1995, Stauffer held a training session regarding sexual harassment which was attended by Olson, Scroggins, Dandurand and others.

Olson was interviewed for a leader position in December 1995. She was interviewed by five managerial/supervisory employees of Defendant, including LaRocque and Brian Fieleke, who was the supervisor on the midnight shift. Olson received some high ratings for technical experience because she knew all the jobs and was already working as a fill-in leader. However, she was ranked lower in other skills by most of the interviewers. LaRocque gave Olson an overall evaluation of 1, the lowest possible score. LaRocque testified that Olson was not the coach-type leader they were looking for. She stated that she was aware of many complaints from Olson's peers about her not interacting well, being very bossy and engaging in inappropriate behavior. LaRocque also stated that Olson did not communicate well with her team and was not good at making decisions on her own. LaRocque stated that, in her opinion, Olson was not qualified for the leader position. LoRocque testified that she told Olson that she needed to work on her communication skills and explained what they were looking for in a leader. According to LaRocque, Olson admitted that people told her she was bossy, did not get along well with other employees and stirred up trouble. LaRocque testified that Olson said she was working hard to "turn that around." At her deposition, Olson stated that she did not recall having this discussion with LaRocque. Fieleke testified that he did not believe Olson was qualified for the leader position because she needed to enhance her communication skills, conflict resolution skills and coaching technique.

Dean Cailteaux received much higher rankings at his interview and was chosen for the leader position. After she did not receive the leader position in December

---

1.  Deborah LaRocque is now Deborah Hill. However, this court will refer to her using the name she had during the relevant time period.

1995, Olson told Fieleke that she no longer wanted to be a fill-in leader because, in her words, if she "wasn't good enough to hold the position on a permanent basis, ... [she] must not be good enough to fill in on it."

On August 15, 1996, an incident occurred at work involving Olson and two male employees, Dandurand and Scroggins. Olson testified that Dandurand and Scroggins made sexual comments to her and touched her inappropriately. Olson testified that neither Dandurand or Scroggins had ever touched her inappropriately before this incident. Olson did not report the incident to anyone. However, Cailteaux noticed she was crying and upset and notified Fieleke. An investigation took place. When interviewed, Olson told Fieleke and LaRocque what had happened. She admitted she used inappropriate language and profanity in an effort to get Dandurand and Scroggins to stop their behavior. When he was interviewed, Scroggins claimed that he was verbally harassed by Olson. Based upon the investigation, Dandurand and Scroggins were issued Level II written warnings. Both were off work for five days without pay and were required to write a personal improvement plan during the time off which stated how they would change their behavior and improve their interactions with Olson and their co-workers. On August 26, 1996, after she returned from a previously scheduled vacation, Olson was issued a Level I written warning based upon her use of verbal sexual comments. At the meeting, Olson admitted using inappropriate language in her attempt to get Scroggins and Dandurand to stop what they were doing. She said she realized she was wrong and should have told Fieleke, LaRocque or Cailteaux instead of trying to handle the incident on her own.

On October 5, 1996, Olson was transferred to the day shift based upon a bid she had made prior to the August 1996 incident. Olson testified that she asked for an immediate transfer after the incident because she was nervous about working with Scroggins and Dandurand, but this request was denied.

In April 1997, Olson applied for an open leader position. She was informed by Don Meeler, the manager of the residential business unit team, that she would not be interviewed for the position. Meeler told her that she would not be interviewed because she was in the discipline process. LaRocque testified that she and Meeler made the decision not to interview Olson because Olson lacked the qualifications for the position and because Olson was in the discipline process. LaRocque stated that there was no written policy that someone in the discipline process could not be considered for a promotion but testified that "[a]nyone in discipline obviously is not the type of role model that we want to have as a leader." Victor Thomas was hired for the position in April 1997. Fieleke and LaRocque testified that they believed Thomas was more qualified than Olson for the position. LaRocque testified that Thomas had good communications skills, interacted effectively with his peers, was able to coach others to be successful and was able to make decisions on his own.

On June 16, 1997, Olson filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights. In her charge, Olson stated:

Over the past ten years, I have applied for promotion including promotion to production leader. The last time I sought such a promotion was in April, 1997. I have been repeatedly passed over in favor of male employees who were less qualified than myself. In fact, no female hourly production worker has ever been promoted into a management-

level position. I believe the reason I have been denied promotions has been my sex (female).

Over the past few years, I have been forced to work in a sexually-hostile environment and have been subjected to repeated acts of sexual harassment, including inappropriate verbal sexual comments as well as inappropriate touching. Despite my complaints to management, no corrective action has been taken. Instead, management has retaliated against me and other female employees who have complained about the sexually-hostile environment and sexual harassment by writing us up and disciplining us for pretextual reasons.

On December 3, 1999, Plaintiff, the EEOC, filed a Complaint (# 1) against Defendant in the Northern District of Illinois. Plaintiff alleged that Defendant violated Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) because Olson was denied a promotion in 1997 because of her sex and in retaliation for making a protected complaint of sexual harassment. On February 10, 2000, Judge Ronald A. Guzman ordered that the case should be transferred to the Central District of Illinois. On June 12, 2000, the case was transmitted to this court.

On May 22, 2001, Defendant filed a Motion for Summary Judgment (# 16) and supporting documentation, a Memorandum of Law (# 17), and a Statement of Undisputed Material Facts (# 18). On June 26, 2001, Plaintiff filed a Memorandum in Opposition (# 20), a Response to Defendant's Statement of Undisputed Facts (# 21) and a Statement of Additional Undisputed Material Facts (# 22) with supporting Exhibits (# 23). On July 6, 2001, Defendant filed a Response to Plaintiff's Statement of Additional Undisputed Material Facts (# 24) and a Reply Memorandum (# 25).

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir.1994). Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, a plaintiff must respond to the defendant's motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir.2001). A genuine issue for trial "exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir.2000), *quoting Pipitone v. United States,* 180 F.3d 859, 861 (7th Cir.1999). In making this determination, the court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Moreover, the summary judgment standard is applied with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility. *Michas,* 209 F.3d at 692. However, even in an employment discrimination case, neither the mere exis-

tence of some alleged factual dispute between the parties nor the existence of a "metaphysical doubt" as to the material facts will defeat a motion for summary judgment. *Michas*, 209 F.3d at 692.

## II. SEX DISCRIMINATION

Plaintiff's Complaint alleges that Olson was denied a promotion in 1997 because of her sex. Defendant contends that it is entitled to summary judgment on this claim as the evidence shows that Olson was neither interviewed nor selected for the April 1997 leader position because management believed that she was not qualified for the position and because she was in the discipline process. Defendant notes that Olson was previously interviewed for the position and was found to lack the leadership and communication skills required for the job. It is not disputed that management believed she was still deficient in those respects in 1997. In Response, Plaintiff argues that the facts show that the reasons given are a pretext for discrimination on the basis of sex. This court cannot agree.

Plaintiff is proceeding in this case based upon the burden shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this method, the plaintiff must first establish a prima facie case. *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 600 (7th Cir.2001). If the plaintiff meets this burden, the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. *See Olsen*, 267 F.3d at 600. Once the defendant has done so, the burden shifts back to the plaintiff to prove that the defendant's articulated reason is a pretext for discrimination. *Olsen*, 267 F.3d at 600. At all times, the ultimate burden of persuasion remains with the plaintiff. *Nawrot v. CPC Int'l*, 277 F.3d 896, 904 (7th Cir.2002).

■ To establish a prima facie case for failure to promote, Plaintiff must show: (1) Olson was a member of a protected group; (2) Olson applied for and was qualified for the position; (3) Olson was rejected for the position; and (4) those who were promoted had similar or lesser qualifications for the position. *Pafford v. Herman*, 148 F.3d 658, 669 (7th Cir.1998), *cert. denied*, 525 U.S. 1020, 119 S.Ct. 548, 142 L.Ed.2d 455 (1998). This court notes that there is clearly a question in this case regarding whether Plaintiff can show the second element, that she was qualified for the position. However, this court concludes that it is appropriate to move directly to the third stage of the burden-shifting paradigm, the question of pretext. *See Nawrot*, 277 F.3d 896, 906; *Olsen*, 267 F.3d at 600. To show pretext, Plaintiff must present evidence from which this court may infer that Defendant did not, at the time of its promotion decision, honestly believe the reason it gave for not interviewing and not promoting Olson. *See Michas*, 209 F.3d at 695. It is not this court's role to second guess the business decisions made by an employer. *See Michas*, 209 F.3d at 695; *see also Nawrot*, 277 F.3d 896, 906 (this court does not "sit as a super-personnel department that reexamines an entity's business decision and reviews the propriety of the decision"). "In other words, arguing about the accuracy of the employer's assessment is a distraction, because the question is not whether the employer's reasons for the decision are 'right but whether the employer's description of its reasons is *honest*.'" *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir.1998) (citations omitted) (emphasis in original). Plaintiff must show that both of the reasons given by Defendant are pretextual in order to withstand summary judgment. *See Olsen*, 267 F.3d at 601.

In this case, Plaintiff has conceded that Fieleke, who was a member of the inter-

view team in 1997, did not believe Olson was qualified for the leader position because he did not believe that her personal or communications skills had changed between the time she interviewed for the leader position in December 1995 and when she applied in April 1997. Most importantly, Plaintiff has conceded that LaRocque, who was involved in the decision not to interview Olson in 1997:(1) believed, based upon her dealings with Olson and opinions shared by other team members and peers of Olson, that Olson was not the "coach type of leader" that Defendant was looking for to fill the leader position because she viewed Olson as someone who would tell people what to do rather than show and help them to do it; (2) felt that Olson did not interact well with others because she was bossy, did not communicate well and engaged in inappropriate behavior; (3) believed that Olson had difficulty making decisions on her own as she would often go to her supervisor with questions about decisions she was asked to make; and (4) believed that Olson was not qualified to fill a leader position. Plaintiff has therefore conceded that LaRocque and Fieleke believed that Olson was not qualified for the position. Consequently, this court concludes that Plaintiff cannot show that the reason given by Defendant was not honestly held.

Plaintiff argues, however, that it is undisputed that Olson was qualified technically for the job of leader based upon her years of experience. Plaintiff also notes that Olson served in the capacity of fill-in leader for approximately two years with no problems. Plaintiff further notes that Olson believed she was more qualified than

Thomas because, based upon her years of seniority and tile making knowledge, she had a better understanding of what the company wanted as far as the product going out the door.

This court first notes that Olson's assessment of her own qualifications for the position is not sufficient to show that Defendant's contrary assessment was pretextual. The Seventh Circuit has stated, in discussing the nature of the pretext inquiry, that "it is not enough for a plaintiff to show that his employer's explanation was based upon an inaccurate assessment of its employee's performance." *Olsen,* 267 F.3d at 602. In *Olsen,* the Seventh Circuit specifically held that an *"employee's* perception of his own performance ... cannot tell a reasonable factfinder something about what the *employer* believed about the employee's abilities." *Olsen,* 267 F.3d at 602 (emphasis in original); *see also Raymond v. City of Chicago,* 2002 WL 187501, at *12–13 (N.D.Ill.2002). Moreover, Plaintiff's repeated claim that Olson was never informed that she was not qualified for the leader position does not address whether Defendant honestly believed that Olson lacked the qualifications to be a leader.[2] *See Nawrot,* 277 F.3d 896, 907. It is Defendant's belief that matters. *Nawrot,* 277 F.3d 896, 907.

Plaintiff also argues that Defendant's claim that Olson did not have the qualifications for the position is pretextual because none of the qualities it claims Olson lacked were listed on the April 1997 job announcement for the leader position. This court concludes, however, that it was reasonable for Defendant to want to hire a

---

**2.** This court also notes that it agrees with Defendant that Olson's testimony that she was not informed of her deficiencies was equivocal at best. She testified only that she did not recall LaRocque discussing these issues with her. Olson also testified that Patterson "may have" told her that she needed to work on her relationships with people in order to make a serious run for a leader job. She further admitted that she understood that Patterson felt there were certain areas that she needed to work on to successfully advance to the leader position.

leader who interacted well with others and could make decisions independently, even though these qualifications were not specifically listed in the job announcement. This court additionally notes that these job skills were included on the interview form used to evaluate candidates for the position. Plaintiff also argues that the reason given was pretextual because Olson had always been interviewed for the position before and "the only thing that really changed between 1995 and 1997 was that Olson's gender became an issue as a result of the 1996 sexual harassment investigation." However, again, Plaintiff has conceded that LaRocque, who was involved in the decision not to interview Olson, believed that Olson was not qualified for the position. This court also notes that it finds it hard to believe that Defendant was not aware of Olson's gender prior to the sexual harassment investigation.

Because Plaintiff has not shown that one of the reasons given by Defendant, that Olson lacked the qualifications for the leader position, was pretextual, this court does not need to address the other reason given by Defendant, that Olson was not interviewed because she was in the discipline process. This court does note, however, that it does not find persuasive Plaintiff's argument that this reason is pretextual because Dandurand was allowed to continue working as a fill in leader after he was disciplined. It is undisputed that Dandurand was already working as a fill-in leader and was not "promoted" following his discipline. Plaintiff has not presented any evidence that any other employee was allowed to interview for a promotion while in the discipline process.

This court concludes that Plaintiff has not met its burden to show that the reasons given by Defendant for not interviewing and promoting Olson were a pretext for discrimination based upon Olson's sex. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of sex discrimination.

## III. RETALIATION

Plaintiff also claims that Defendant retaliated against Olson in violation of Title VII when Olson was denied an interview and a promotion in April 1997 and also when Defendant disciplined Olson and denied her request for a transfer in August 1996. Title VII makes it unlawful "for an employer to discriminate against any of his employees ... because he [or she] has opposed any practice made an unlawful employment practice [by Title VII]." *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 889–90 (7th Cir.2001), *quoting* 42 U.S.C. § 2000e 3(a). The familiar framework of *McDonnell Douglas* applies to retaliation cases. *Pafford*, 148 F.3d at 670; *Knox v. State of Ind.*, 93 F.3d 1327, 1333 (7th Cir.1996). To establish a prima facie case of retaliation under Title VII, Plaintiff must establish that: (1) Olson engaged in "statutorily protected expression," (i.e. reporting or otherwise opposing conduct prohibited by Title VII, such as sexual harassment); (2) Olson suffered an adverse, job-related action by Defendant; and (3) there was a causal link between her opposition to unlawful discrimination and the adverse action. *Murray*, 252 F.3d at 890; *see also Hall v. Bodine Elec. Co.*, 276 F.3d 345, 357. If a plaintiff succeeds in establishing a prima facie case, the employer must articulate a legitimate, non-retaliatory reason for its actions and, if it does, the burden shifts back to the plaintiff to show that the proffered reasons are pretextual. *Knox*, 93 F.3d at 1334; *see also Hall*, 276 F.3d at 357–58.

■ This court concludes that Olson's reports regarding the inappropriate conduct of Scroggins and Dandurand are sufficient to establish the first element of Plaintiff's prima facie case, even though

Olson did not formally complain following the incident but only related what happened when she was approached during the investigation. The Seventh Circuit has recently recognized that informal complains of discrimination may constitute protected expression under Title VII. *Krause v. City of LaCrosse*, 246 F.3d 995, 1000 (7th Cir.2001).

■ This court concludes, however, that Plaintiff cannot establish a prima facie case of retaliation regarding Defendant's failure to promote her because she has not shown a causal connection between Olson's complaint of sexual harassment and the failure to promote her approximately eight months later. This length of time between the protected speech and the adverse employment action, without more, is too long to support a reasonable inference of causation. *See Horwitz v. Board of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 613 (7th Cir.2001) (six months too long); *Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir.2001) (four months too long). In fact, the Seventh Circuit has held that a substantial time lapse is considered counter-evidence of a causal connection. *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 616 (7th Cir.2001). This court concludes that the undisputed facts do not support a conclusion that Olson's protected activity (her report of sexual harassment) was the cause of Defendant's decision not to consider her for promotion. *See Raymond*, at 907. However, even assuming that Plaintiff could establish a prima facie case, this court has already found that Plaintiff has not shown that one of Defendant's stated reasons for its decision, that Olson was not qualified for a position as leader, was pretextual. This finding was fatal to Plaintiff's sex discrimination claim and dooms its retaliation claim based upon the failure to promote Olson as well.

■ Defendant next argues that placing Olson in the disciplinary process for conduct she admitted was not an adverse job action. This court first notes that it is undisputed that Olson admitted using inappropriate language during the incident with Scroggins and Dandurand, a fact confirmed by the account of the incident provided by Scroggins. The Seventh Circuit has recently stated that "an employee's complaint of harassment does not immunize her from being subsequently disciplined or terminated for inappropriate workplace behavior." *Hall*, 276 F.3d at 359.

In any case, this court agrees with Defendant that the Level I written warning issued to Olson was not an adverse, job-related action. For an employment decision to be actionable, it must constitute a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Bell v. Environmental Prot. Agency*, 232 F.3d 546, 555 (7th Cir.2000), *quoting Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Accordingly, the Seventh Circuit has held that a letter of reprimand is not an adverse employment action unless it is accompanied by some other action, such as job loss or demotion. *Krause*, 246 F.3d at 1000; *Sweeney*, 149 F.3d at 556; *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir.1996). Plaintiff argues that the discipline in this case was accompanied by some other action, Defendant's refusal to consider Olson for promotion because she was in the discipline process. However, Defendant has presented evidence to show that Olson was denied an interview and a promotion in April 1997 for another legitimate reason, Defendant's belief that Olson lacked the qualifications for the position. Therefore, this court agrees with Defendant that Plaintiff is unable to dispute that Olson would not have been considered for the leader position even if her record was

discipline-free. This court concludes that issuing Olson a Level I written warning was not accompanied by some other action and was not an adverse employment action.

■ Defendant also argues that the delay in completing Olson's previous bid for a transfer to the day shift cannot be considered an adverse employment action. This court agrees. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Murray,* 252 F.3d at 888, *quoting Smart,* 89 F.3d at 441. A "materially adverse change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Krause,* 246 F.3d at 1001, *quoting Johnson v. City of Fort Wayne,* 91 F.3d 922, 932 (7th Cir.1996). Olson testified that she asked for an immediate transfer because she was "nervous" working with Scroggins and Dandurand. She also testified that she was afraid of Scroggins. However, Defendant disciplined Scroggins and Dandurand for their behavior and required them to write a personal improvement plan.[3] Olson testified that, before her transfer, Scroggins and Dandurand did not cooperate with her. She also testified that Dandurand was allowed to continue working as a fill-in leader and there were occasions when Dandurand ignored her requests for assistance. On another occasion, Dandurand asked her to help another employee clean up. However, Olson did not testify that she was subjected to any further sexual harassment by either Scroggins or Dandurand. Therefore, this court concludes that the relatively brief delay in transferring Olson to the day shift cannot be considered an "adverse job action." None of cases cited by Plaintiff support a contrary finding. Although Plaintiff is correct that the law does not take a "laundry list" approach to retaliation (*see Knox,* 93 F.3d at 1334), the law is clear that the action taken by the employer must constitute a "significant change in employment status." *See Bell,* 232 F.3d at 555. That did not occur here.

For all of the reasons stated, this court concludes that Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment (# 16) is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff.

(2) This case is terminated. The parties shall be responsible for their own court costs.

---

**3.** This court does not find persuasive Plaintiff's argument that the sole reason Scroggins and Dandurand received a higher level of discipline than Olson was because they were both already in the discipline process at the time of the August 1996 incident. Plaintiff has submitted evidence to show that both Scroggins and Dandurand were issued a written warning earlier in 1996 for conduct not related to the later sexual harassment. However, Defendant's discipline policy provides that a Second Written Warning is used for more serious situations or as a followup to a previous written warning. The policy states that this level of discipline includes a minimum one-day disciplinary suspension. Both Scroggins and Dandurand were given a five-day suspension without pay. The written warnings issued to Scroggins and Dandurand do not state that the longer suspension was because they had previously been issued a written warning but instead discuss the serious nature of their inappropriate behavior. Based upon the record before it, this court concludes that Defendant disciplined Scroggins and Dandurand more severely because it recognized that they engaged in, as stated in the written warnings, "very serious inappropriate behaviors."