**Constance G. MORRIS, Plaintiff–Appellant,**

v.

**VANDERBURGH COUNTY HEALTH DEPARTMENT, et al., Defendants–Appellees.**

No. 02–1926.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 17, 2002.

Decided Feb. 26, 2003.

Before BAUER, CUDAHY, and COFFEY, Circuit Judges.

## ORDER

Constance Morris, an African–American, filed suit against numerous departments and governmental bodies of Vanderburgh County, Indiana (collectively the "County") asserting that they discriminated against her based on her race when they failed to promote her to supervisor of the County Health Department's Vital Records Department. The district court granted summary judgment to the County Health Department, concluding that Morris had failed to demonstrate that the reasons proffered by the County for promoting another employee were pretext for discrimination. Morris appeals, and we affirm.

Morris commenced her employment with the County's Health Department in 1988 as a deputy registrar in the Vital Records Department. The Vital Records Department collects and records birth, death, and adoption records for Vanderburgh County and reports them to the state health department. Ind. Stat. § 16–20–1–17. Morris's duties included dealing with the public who came to the Department, answering the telephone, and recording death certificates, affidavits, and paternity name changes. At all relevant times Dr. John Heidingsfelder was the Vanderburgh County Public Health Officer and was responsible for overseeing the operation of the Health Department. Samuel Elder, the Executive Director of the Health Department, was responsible for managing the department, implementing policy, and supervising managerial staff, including Sharon King, the supervisor of the Vital Records Department.

In 1992 the County hired Susan Teer as a deputy registrar in the Vital Records Department. Teer's duties were similar to Morris's and she recorded only birth certificates and adoptions rather than death certificates. In December 1999 King decided to retire, and she notified Elder and Heidingsfelder of her intention in early January 2000. The County posted a vacancy announcement for King's position, and both Morris and Teer timely applied. Heidingsfelder was responsible for deciding who to promote, and Elder–based on his observations, review of the candidates' files, and discussions with King– recommended that Teer be promoted. Heidingsfelder also reviewed the candidates' files and spoke with King, and decided to promote Teer instead of Morris. At the end of January, he and Elder met with Morris to tell her of the decision.

At the center of the dispute is the information in Teer's and Morris's personnel files, and the information provided to Heidingsfelder by King. Morris argues that this information was insufficient to justify Heidingsfelder's decision not to promote her. Although Teer's file contained no documentation indicating anything about her job performance, Morris's contained both positive and negative information. Several of Morris's performance reviews were generally positive, but the file also contained negative comments such as that she had "too much unfinished work on her desk" and "waste[s] time." The file further documented several instances in 1991 and 1992 where Morris either mistakenly changed (her version) or deliberately falsified (the County's version) several birth and death certificates without obtaining proper documentation. It also showed that Morris altered a balance sheet to cover a shortfall in receipts for the day, fell behind in her work, made too many telephone calls, and was reprimanded for failing to notify the Health Department on several days she was unable to work.

On January 24, 2000, Morris filed a charge of discrimination with the EEOC. On February 15, after the decision to promote Teer had been made, King drafted a memorandum (erroneously dated February 15, 1999) providing reasons she believed that Morris was not qualified for the supervisor position. The memorandum essentially summarized the information contained in Morris's file but also stated that Morris refused to attend State Board of Health meetings, refused to take initiative on her own, and filled out an "unacceptable amount" of certificates incorrectly. The EEOC issued Morris a right-to-sue letter in April 2000, and she timely filed suit in the district court alleging that the County had discriminated against her because of her race.

After discovery, the County moved for summary judgment. The court granted the County's motion, analyzing Morris's claim under the familiar indirect method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It assumed without deciding that Morris had established a prima facie case of race discrimination, because the issue whether she was qualified for the supervisor position "dovetailed" with the issue of pretext, and concluded that the County had provided a legitimate non-discriminatory reason for its decision—Morris's past job performance, personnel files, and supervisors' comments indicated that she was not the more qualified candidate for the job. The burden then shifted back to Morris to prove that the County's proffered reason was merely pretext for discrimination. The court rejected Morris's argument that the existence of King's memorandum showed that Heidingsfelder's purported reasons for not promoting her were a lie, however, because the record established that Heidingsfelder did not rely solely on the memo in making his decision, but also on his review of the candidates' personnel files, Elder's recommendation, and the Health Department's policies and procedures.

Morris raises two challenges to the district court's judgment, asserting 1) that she was qualified for the supervisory position and thus established a prima facie case of discrimination, and 2) that the court wrongly concluded that she failed to prove that the County's proffered reason for not promoting her was pretext for discrimination. We review the district court's grant of summary judgment *de novo*, taking all facts and inferences therefrom in a light most favorable to Morris. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 352 (7th Cir.2002). Because the issue whether Morris presented a prima facie case overlaps with the issue of pretext, we, like the district court, need not consider the issue of a prima facie case and will proceed to decide whether she established pretext. *Id.* at 358; *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 600–01 (7th Cir.2001).

With respect to the issue of pretext, Morris asserts a two-pronged attack. Initially she asserts that Heidingsfelder's proffered reason for not promoting her—that she was not as qualified as Teer—must have been a lie because he purportedly relied on King's memorandum in reaching his decision. She asserts that King's memorandum was created after Heidingsfelder had made his decision and was the only document questioning Morris's ability to act as a supervisor, and thus Heidingsfelder's explanation of his reasoning was "spurious." In the discrimination context, pretext means "a dishonest explanation, a lie rather than an oddity or an error." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 545 (7th Cir.2002) (citation omitted). We do not sit as a "super-personnel department" weighing the wisdom of a promotion decision, but are concerned only with whether the em-

ployer's explanation for its action was honest. *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 984 (7th Cir.2001) (citations omitted). To demonstrate that Heidingsfelder's explanation was a lie, Morris needed to establish that it had no basis in fact, was not the real reason for his decision, or was insufficient to motivate his action. *Hoffman–Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 652 (7th Cir.2001). She failed to accomplish this.

Morris's argument completely overlooks the uncontradicted evidence that numerous documents contained in her personnel file demonstrated that she was not qualified to become a supervisor. Her file documented three instances in which she either mistakenly issued altered documents (her view) or purposefully falsified them (the County's view). It also contained performance reviews which, while generally positive, documented that she needed to stop procrastinating at her work and deal with the public more effectively. It is undisputed that Heidingsfelder personally reviewed her personnel file and viewed these documents. Additionally, both her direct supervisor, King, and the Executive Director of the Health Department, Elder, recommended to Heidingsfelder that he promote Teer. That Heidingsfelder mistakenly testified at his deposition–almost a year and a half after deciding not to promote Morris–that he relied on King's memorandum does not refute the fact that Morris's file contained information from which he could have reasonably determined that she was not qualified for the promotion. Morris failed to produce any evidence to the contrary, and the district court correctly found that she failed to establish that his determination was pretext for discrimination. *Compare Allen v. Chicago Transit Auth.,* 317 F.3d 696, 698–700 (7th Cir.2003) (summary judgment improper where employer's noninvidious reason for promotion decision is undercut by witness whose testimony repeatedly contradicted both itself and documentary evidence).

Morris also asserts that the fact that King's memorandum exists at all suggests that Heidingsfelder's reason was pretext, because the memorandum was nothing but "an attempt to create a post facto paper trail justifying the decision to promote Teer over Morris." But Morris does not assert that any of the information contained in the memorandum is false or that it is probative of race discrimination. The memorandum did nothing more than put King's spin on the materials contained in Morris's file, and it does not bear on the issue whether Heidingsfelder's explanation for his decision was truthful. *See Krchnavy v. Limagrain Genetics Corp.,* 294 F.3d 871, 877 (7th Cir.2002) (supervisor's inaccurate statements, which were not probative of illegal discrimination, could not be considered regarding issue of pretext).

We AFFIRM the judgment of the district court.