**Roxanne G. FONTENOT**

v.

**Christopher C. BUUS, et al**

**No. 02CV2596.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

July 26, 2004.

Tara B. Hawkins, James B. Doyle, Sr., Doyle & Hawkins, Lake Charles, LA, for Roxanne G. Fontenot, Plaintiff.

Christopher E. Buus, Brookings, SD, Pro se.

Scott J. Scofield, Scofield Gerard et al., Lake Charles, LA, for Christopher E. Buus, Davidson Inc., Jeld–Wen Inc., Defendants.

## MEMORANDUM RULING

TRIMBLE, District Judge.

Currently before the Court is a "Motion for Summary Judgment" [doc. # 23] filed by Defendants, Davidson, Inc. and Jeld–Wen, Inc. ("Davidson").[1] Davidson is seeking to dismiss all of Plaintiff, Roxanne G. Fontenot's ("Fontenot") claims because there are no genuine issues of material fact and Davidson is entitled to judgment as a matter of law.

### FACTUAL STATEMENT

Fontenot worked for Davidson as a personnel and benefits manager from June 26, 2000 until November 28, 2001. Christopher Buus ("Buus") worked for Davidson as an office manager from August 2, 2000 until about January 28, 2002. In April or May of 2001, Fontenot and Buus began a sordid consensual office affair. Both were married at the time, but not to each other. During this tawdry six (6) month episode of extramarital promiscuity, the couple exchanged graphic sexually detailed e-mails at work during office hours, oftentimes professing their love and affection for each other. Unsurprisingly, this consensual affair soured and Fontenot claims she tried to terminate the illicit relationship. Buus resisted, and began a campaign of stalking and harassing Fontenot outside the workplace.

On or about August 2001, Fontenot informed her immediate supervisor, Wayne Jones, Davidson's General Manager, of the consensual sexual relationship between herself and Buus. This was prompted by Fontenot's husband, Billy Fontenot, visiting Mr. Jones and revealing his concern about his wife's possible infidelity.[2] Mr. Jones immediately contacted Davidson's legal department, seeking advice on the policy regarding workplace romance. Davidson advised Mr. Jones to review the anti-harassment policy with both Fontenot and Buus and to tell them to keep their personal lives out of the workplace.[3]

In late October or early November 2001, Fontenot informed Mr. Jones that she believed Buus was stalking her after work. Mr. Jones, again, immediately contacted the legal department seeking advice regarding Fontenot's allegations. During November 2001, Fontenot met three (3) times with Mr. Jones and Mike Guillot, Davidson's marketing manager, concerning Buus' alleged stalking. At this time, Fon-

---

1. Fontenot filed a motion to dismiss Christopher Buus [doc. # 5] without prejudice due to his being discharged in Bankruptcy. The motion was granted on March 20, 2003 [doc. # 6].

2. On September 5, 2001, Mr. Fontenot filed for divorce; Fontenot's extramarital affair with Buus was a causative factor of the divorce.

3. On August 7, 2001, Buus signed an acknowledgment that he had carefully reviewed and understood Davidson's anti-harassment procedures and guidelines. On August 10, 2001, Fontenot did the same.

tenot had no objective evidence that Buus was in fact her stalker.[4] Buus hired an attorney who sent Fontenot a letter threatening to sue her for allegedly spreading lies about him.[5] At this point, Fontenot told Mr. Jones and Mr. Guillot that she could not work with Buus.

Mr. Jones investigated Fontenot's accusations by interviewing employees, but, like the police and Fontenot, Mr. Jones could find no evidence to substantiate the charges against Buus. Nonetheless, Mr. Jones warned Buus of possible termination if the allegations were found to be true.[6] Mr. Jones instructed Fontenot and Buus to minimize their personal interaction at work and to limit their communications to e-mails. Mr. Jones instructed other employees to accompany Fontenot if she had to meet with Buus in person and to watch for any improper behavior by Buus.[7] At the November 20, 2001 meeting, Fontenot complained to Mr. Jones about Buus "leering" at her as he used the copy machine located across the hall from her office.[8]

On more than one occasion in November 2001, Mr. Jones warned Fontenot about her failure to perform her job duties and on November 28, 2001, Fontenot was dis-

charged after failing to timely perform several important job assignments within a one month period. These assignments included (1) failure to timely process a report on commissions owed to salesmen resulting in several salesmen not receiving their respective commissions on time on or about November 12, 2001; (2) refusal to work with Buus on November 19, 2001[9]; (3) failure to timely submit payables via e-mail to accounting on November 21, 2001, resulting in the company losing applicable discounts for prompt payment; and (4) failure to distribute annual open enrollment insurance change forms to all employees, on or about November 28, 2001, after telling Mr. Jones that she had done so.[10]

On January 28, 2002, Buus was arrested for stalking after a neighbor "tackled" him late one night near Fontenot's apartment. Upon hearing of the arrest, Mr. Jones immediately discharged Buus.

On May 6, 2002, Fontenot filed an EEOC charge for hostile work environment and retaliation. On September 17, 2002, the EEOC advised Fontenot's counsel that it would be recommending dismissal of the EEOC charges. The EEOC

---

4. Harassing telephone calls were made from pay phones and there were no eyewitnesses to confirm the acts of vandalism. At least 16 police officers investigated Fontenot's allegations, but police officers could find no evidence against Buus until his arrest on January 28, 2002, for stalking.

5. At all times prior to his arrest, Buus strongly denied all accusations that Fontenot was making against him.

6. Mr. Jones and Mike Guillot also met three (3) times with Buus during November 2001, and advised him to keep his personal problems out of the workplace, that his work was expected to be up to standard, and to limit his contact with Fontenot. He was also warned that he could possibly be disciplined, including being discharged.

7. Mr. Jones fully cooperated with the police's investigation of Fontenot's charges against Buus, answering all of their questions and giving them full access to relevant records, including phone records.

8. Buus' office was downstairs and Fontenot's office was on the second floor adjacent to Mr. Jones' office.

9. In her position as a personnel and benefits manager, Fontenot periodically had to exchange personnel, payroll, and benefits-related information with Buus and other managers.

10. Mr. Jones was informed by other employees that they had not received the forms. This resulted in the company having to call truck drivers and salesmen in a rush effort to meet the enrollment change deadline.

issued a Dismissal and Notice Rights on September 19, 2001. Fontenot filed the instant suit on December 19, 2002.

### SUMMARY JUDGMENT STANDARD

Summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [11] The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact. [12]

Once the movant meets this burden, it then shifts to the non-movant to go beyond the pleadings and designate specific facts to show that there is a genuine issue for trial. [13] The court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. [14] The nonmoving party's burden will not be satisfied by "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. [15] Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant". [16]

*Were Fontenot's claims prescribed?*

Davidson alleges that Fontenot's claims have prescribed. Fontenot received the Dismissal and Notice of Right to Sue on September 20, 2002. The Notice provides the following pertinent provision:

> If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

Fontenot filed suit on December 19, 2002, within ninety days of her receipt of the notice, thus, the claim is not prescribed.

*Does Fontenot have a valid cause of action for sexual discrimination under Title VII?*

Fontenot alleges that she suffered hostile work environment harassment. Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." [17] A Title VII violation may be established by proving "that discrimination based on sex has created a hostile or abusive working environment." [18] To overcome a motion for summary judgment on a Title VII discrimination claim, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination. [19] Fontenot's prima facie case must show that (1) she belonged to a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew

---

**11.** Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**12.** *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

**13.** *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

**14.** *Ameristar Jet Charter v. Signal Composites,* 271 F.3d 624, 626 (5th Cir.2001).

**15.** *Little,* 37 F.3d 1069, 1075.

**16.** *Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir.1993); *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**17.** 42 U.S.C. § 2000e–2(a)(1).

**18.** *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

**19.** *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 354 (5th Cir.2001).

or should have known of the harassment and failed to take prompt remedial action.[20] The final element is not required in order to subject the employer to vicarious liability "where the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim."[21]

Once the prima facie case is established, an inference of intentional discrimination is raised and the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for its actions," and if the defendant satisfies this burden, the plaintiff "must prove that the proffered reasons are pretextual."[22] Upon reaching the pretext stage, " 'the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination'."[23]

■ Davidson correctly argues that Fontenot failed to establish a prima facie case. Fontenot argues that Buus was her immediate supervisor. The Court does not agree. The "essence of supervisory status is the authority to affect the terms and conditions of the victim's employ-

ment."[24] Specifically, the harassing employee must have "the power to hire, fire, demote, promote, transfer, or discipline an employee."[25] An employee does not qualify as a supervisor for purposes of imputing liability to the employer without an entrustment of at least some of this authority.[26] Plaintiff admits in her deposition that "Wayne was my boss. Chris wasn't my boss."[27] She also states with regard to dismissal that "I always knew Wayne would make the final decision."[28] The Court concludes that Buus was not Fontenot's immediate supervisor, thus Davidson cannot be held vicariously liable for Buus' acts. This determination precludes Fontenot's state law claims as well.

■ Fontenot has submitted no evidence to create an issue of material fact as to whether Buus created a sexually hostile work environment. Based on the submitted facts, Davidson did not allow Buus to create a sexually charged, abusive workplace as described in *Meritor*.[29] A hostile environment claim requires (1) sexually "discriminatory intimidation, ridicule and insults," which are (2) so sufficiently se-

**20.** *Jones v. Flagship Int'l*, 793 F.2d 714, 719–20 (5th Cir.1986); *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir.1999).

**21.** *Celestine*, 266 F.3d at 353; *Burlington Industries, Inc., v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

**22.** *Celestine*, 266 F.3d at 355.

**23.** *Id.*, citing *Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 (5th Cir.2000).

**24.** *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1034 (7th Cir.1998); *Joens v. John Morrell & Co.*, 354 F.3d 938 (8th Cir.2004); *Mikels v. City of Durham, N.C.*, 183 F.3d 323 (4th Cir.1999); *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir.2002).

**25.** *Id.*

**26.** *Id.*

**27.** Dep. Fontenot II at 65, line 3.

**28.** *Id.* at 39, lines 24–25.

**29.** Actionable hostile work environment claim occurs "where the [sexual] conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 477 U.S. at 65, 106 S.Ct. 2399. In *Meritor*, the respondent's allegations included workplace conduct consisting of "not only pervasive harassment but also criminal conduct of the most serious nature." *Id.* at 60, 67, 106 S.Ct. 2399 (Alleged conduct included repeated demands by supervisor for sexual favors during and after business hours, fondling plaintiff in front of other employees, following her into women's restroom, exposing himself to her, and forcible rape on several occasions.)

518

vere or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment.[30]

A "hostile" work environment is defined, under the totality of the circumstances, by factors such as the frequency of the discriminatory conduct, its severity, its nature (e.g., humiliating, physically threatening, or merely an offensive utterance), and by whether it unreasonably interferes with an employee's work performance.[31] No single factor is required, but the challenged conduct must be both objectively and subjectively offensive to merit legal action.[32] At most, within the workplace, Fontenot has alleged that Buus "leered" at her and interfered with repairs to her computer. All of Buus' other alleged harassment took place outside the workplace, away from witnesses. The Court finds that this conduct, at a matter of law, does not objectively rise to the level of sexual harassment, nor did it affect a "term, condition, or privilege of her employment."[33]

Furthermore, Fontenot cannot prove that Davidson "knew or should have known of the harassment and failed to take prompt remedial action."[34] Davidson took prompt remedial actions upon notifi-cation of the affair by contacting its legal department, notifying both Fontenot and Buus of the anti-harassment policy, observing Buus and setting guidelines for both of them in the workplace after Fontenot made her first allegations against him. Plaintiff has failed to raise any disputed issues of material fact to establish her claim of hostile work environment.[35] While the Court is aware of the alleged harassment *outside* of the workplace, the Court is not inclined to impose a duty upon an employer to investigate or obviate such allegations. Accordingly, Davidson is entitled to dismissal on summary judgment on the hostile work environment claim.

*Does Fontenot have a valid cause of action for the alleged retaliatory discharge?*

Fontenot alleges that her complaints about the harassment culminated in the termination of her employment. "A retaliation claim requires, in addition to proof of the plaintiff's protected activity, an adverse employment action, and a causal connection between the adverse action and the protected activity."[36] If Fontenot succeeds in proving a prima facie case, the burden shifts to Davidson to "articulate some legitimate, non-retaliatory reason for its adverse employment action."[37]

---

**30.** *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

**31.** *Id.* at 23, 114 S.Ct. 367.

**32.** *Id.* at 21–23, 114 S.Ct. 367; *See also Shepherd v. Comptroller, Texas,* 168 F.3d 871, 873 (5th Cir.1999) (Defendant-employer merited summary judgment where under totality of the circumstances, harasser's words and actions were "boorish and offensive," but not sufficiently extreme or severe enough to affect a "term, condition, or privilege" of employment); *and DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 593 (5th Cir.1995) ("A hostile environment claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employ-ment and destroy their equal opportunity in the workplace.").

**33.** *Jones v. Flagship Intern.,* 793 F.2d 714, 719–20 (5th Cir.1986).

**34.** *Jones,* 793 F.2d at 719–20.

**35.** The law does not require that an employer's actions prevent harassment, but merely that its response was reasonably likely to prevent future harassment. *Saxton v. Am. Tel. & Tel. Co.,* 10 F.3d 526, 536 (7th Cir.1993)

**36.** *DeAngelis,* 51 F.3d at 597, citing *EEOC v. J.M. Huber Corp.,* 927 F.2d 1322 (5th Cir. 1991).

**37.** *Hockman v. Westward Communications, LLC,* 282 F.Supp.2d 512 (E.D.Tex.2003).

In addition to retaliatory discharge, Fontenot alleges she was treated differently from other employees in that other employees' errors did not result in their termination. In disparate treatment cases, the Fifth Circuit "compare[s] the treatment of other employees whose conduct is 'nearly identical' to the plaintiff's conduct and who were treated more favorably than the plaintiff." [38] Fontenot's declarations of personal knowledge of other employees' errors in the form of an affidavit provide no specifics, nor has Fontenot submitted any other summary judgment evidence, as to the quantity, the timing, or the severity of these alleged errors. Accordingly, Fontenot's attempt to compare her four infractions with her fellow employees falls well short of the 'nearly identical' requirement.

█ Assuming *arguendo* that Fontenot has established all of the elements of a retaliatory discharge, Davidson has provided ample legitimate, non-retaliatory reasons in rebuttal, specifically, failure to timely perform several important job assignments within a one-month period, shifting the burden back to Fontenot to prove that Davidson's reasons are pretextual.[39] In November 2001, after Mr. Jones warned Fontenot about her failure to perform her job duties, Fontenot failed to timely process a report on salesperson commissions, refused to work with Buus on common tasks, failed to timely submit payables via e-mail to accounting, and mislead Mr. Jones about distributing annual open enrollment insurance change forms.[40]

The Court finds that Fontenot has submitted no summary judgment evidence to prove that Davidson's reasons for discharging Fontenot were pretextual or that she was subjected to disparate treatment.

*Is Fontenot entitled to punitive damages?*

█ In her complaint, Fontenot alleges that she is entitled to punitive damages. An employer is liable for punitive damages in a Title VII action if (1) its agent (harassing employee working in supervisory capacity) is employed in a managerial position, (2) the agent acts within the scope of employment, and (3) the agent acts with malice or reckless indifference towards the federally protected rights of the plaintiff.[41] However, punitive liability is not to be imputed to an employer in a Title VII action if the employer made good faith efforts to comply with Title VII and the accused employee's actions are contrary to same.[42]

█ First and foremost, because the Court finds that Buus was not Fontenot's supervisor, Fontenot is not entitled to punitive damages. Furthermore, Davidson had a written policy against sexual harassment, and its Title VII supervisor, Wayne Jones, investigated Fontenot's then-unsubstantiated allegations, worked with the police, conferred with legal counsel, warned Buus he would be fired if the unsubstantiated allegations were later proven true, protected Fontenot at work, and eventually fired Buus when Fontenot's allegations were substantiated. Under *Green*, Davidson cannot be held liable for punitive damages.

**38.** *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 901 (5th Cir.2002).

**39.** *Debs v. Northeastern Ill. Univ.,* 153 F.3d 390, 397 (7th Cir.1998).

**40.** Fontenot argues that during 2001, she received a satisfactory job evaluation and a raise. But while Fontenot received a three-

percent annual increase on July 16, 2001, she received it prior to her employer's allegations that her work performance began deteriorating. Therefore, the pay raise is irrelevant.

**41.** *Green v. Adm'rs of Tulane Educ. Fund,* 284 F.3d 642 (5th Cir.2002).

**42.** *Id.*

## CONCLUSION

Based on the foregoing, the Court will grant Davidson's motion for summary judgment, dismissing Fontenot's claims with prejudice, at her cost.