NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 24, 2013[*]
Decided July 30, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 12-3782

| | |
|---|---|
| MELVIN D. REED, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 11-C-221 |
| LINCARE, INC., *Defendant-Appellee.* | Rudolph T. Randa, *Judge.* |

**O R D E R**

Melvin Reed, who is African-American, appeals the district court's grant of summary judgment against him in this lawsuit involving claims of employment discrimination. Reed was fired after working only one week as an on-call service representative for Lincare, Inc., which provides oxygen and other medical equipment to clinics, hospitals, and patients' homes. On his second day on the job, Reed told the employee who was training him, Jeff Sekely, that he was thinking about enrolling in night classes. Sekely expressed concern that Reed's plans would interfere with his new job, and he

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

relayed Reed's comment to manager Angela Emley. When Emley asked Reed about his plans, he confirmed that he was considering a return to school. Over the next several days, according to Reed, Sekely made several racist comments, describing the company's African-American clients as "dysfunctional" because they did not allow Lincare's service representatives to enter their homes and stating that African-Americans did not value education or marriage and should not receive free meals at school. He became angry when Reed mentioned that he did not want to work too many hours, and he passed these remarks along to Emley. After working for Lincare for a week, Reed called in sick. Emley fired him later that day, explaining that she did not believe he was a good fit for the position.

Reed responded by filing a discrimination complaint with the Equal Rights Division of Wisconsin's Department of Workplace Development, speculating that Emley had fired him on Sekely's racist advice. Throughout the administrative proceedings he made several settlement demands. The Division concluded that there was no probable cause for finding racial discrimination, and Reed filed an administrative appeal.

One day before the hearing on his administrative appeal, Reed withdrew his charge and then filed this suit under Title VII of the Civil Rights Act of 1964, alleging that Lincare discharged him and subjected him to a hostile work environment based on his race. See 42 U.S.C. §§ 2000e–2(a)(1), 2000e–3(a). After discovery, the district court granted Lincare's motion for summary judgment, concluding that Reed failed to make out a *prima facie* case of discrimination because he did not identify any similarly situated non-African-American employee who received better treatment. The court noted that Reed had not identified evidence calling into question Lincare's proffered legitimate reason for firing him—its perception that he was unwilling to work the required on-call hours. With respect to Reed's hostile work environment claim, the court opined that he did not describe conduct by Sekely that rose to the level of harassment, and he did not claim to have told his employer about Sekely's statements. The court concluded by granting Lincare's motion for sanctions, assessing $5,000 in attorney's fees based on its finding that Reed's litigation strategy demonstrated that he had filed suit for the improper purpose of coercing Lincare into settlement.

On appeal Reed first argues that the district court erred by granting summary judgment against him on his claim that he was discharged based on his race. He maintains that Lincare was obligated to investigate Sekely's reports before firing him and that by acting on Sekely's advice the company facilitated his racism. But while an employer opens itself up to charges of discrimination when it *blindly* relies on the reports of a racist employee, see *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 917–18 (7th Cir. 2007); *Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1015 (7th Cir. 2004), Reed acknowledges that Emley followed up with him when she learned about his plans to return to school. Nor can

Reed show discrimination based on Emley's reliance on Sekely's second report, because he produced no evidence to undermine the accuracy of that report or to show that Sekely did not report similar remarks by employees of other races. See *Byrd v. Ill. Dep't of Pub. Health*, 423 F.3d 696, 711–12 (7th Cir. 2005); *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997).

Reed maintains, too, that the district court improperly found that he had not identified evidence of harassment serious enough to create a hostile work environment. We assume for the sake of argument that the remarks that Reed identifies are sufficiently offensive to support a finding of a hostile environment. Nonetheless, because Sekely did not have direct authority to hire, fire, demote, promote, transfer, or discipline Reed, Lincare could not be liable for his actions unless it was negligent in failing to prevent his harassment. See *Vance v. Ball State Univ.*, No. 11-556, 2013 WL 3155228, at *3 (June 24, 2013); *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002). Because Reed never brought Sekely's remarks to Lincare's attention, he cannot show negligence, and summary judgment was properly granted on this claim. See *Durkin v. City of Chicago*, 341 F.3d 606, 612–13 (7th Cir. 2003).

Reed also argues that the district judge abused his discretion by denying Reed's motion to recuse or disqualify himself. But Reed's only purported evidence of bias is that the same judge had ruled against him in several other cases (one of which included rulings reversed on appeal), which in itself is insufficient to call into question the judge's impartiality. See *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009); *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1025 (7th Cir. 2000). Moreover, to the extent that Reed's recusal motion is construed as invoking 28 U.S.C. § 455(a), Reed waived any challenge to the district court's denial of the motion by failing to file a petition for a writ of mandamus. See *id.*; *United States v. Diekemper*, 604 F.3d 345, 351–52 (7th Cir. 2010).

Finally, Reed argues that the district court abused its discretion by granting Lincare's motion for sanctions. But given Reed's conduct throughout these proceedings, including his repeated settlement demands, the relative weakness of his case, and his inflammatory rhetoric, we cannot say that no reasonable jurist could have concluded that Reed filed this suit with the intent to harass Lincare and extract a settlement from it. See FED. R. CIV. P. 11(b)(1), (c)(1); *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003). As the district court noted, in this and his many other employment discrimination suits, Reed has consistently delayed administrative proceedings before filing suit in federal court, and he repeatedly demanded settlements from Lincare backed by the threat of expensive and potentially embarrassing litigation.

AFFIRMED.